AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

for the

**Western District of New York**

**United States of America**

**v.**

**BRIAN WHITE,**

*Defendant*

**Case No. 25-MJ-657**

## CRIMINAL COMPLAINT

I, Christa Snyder, the complainant in this case, state that the following is true to the best of my knowledge and belief: between on or about June 4, 2024, and on or about April 4, 2025, in the Western District of New York, the defendant, BRIAN WHITE violated:

(1) 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (Receipt of Child Pornography); and
(2) 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography).

This Criminal Complaint is based on these facts: **SEE ATTACHED AFFIDAVIT OF FBI SPECIAL AGENT CHRISTA SNYDER.**

☒ Continued on the attached sheet.

CHRISTA SNYDER
Special Agent
Federal Bureau of Investigation

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: November 19, 2025

*Judge's signature*

City and State: Rochester, New York

HON. MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK )
COUNTY OF MONROE ) SS:
CITY OF ROCHESTER )

I, CHRISTA SNYDER, being duly sworn, depose and state:

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, Buffalo, New York. I am an investigative or law enforcement officer of the United States, empowered to perform investigations and make arrests related to violations of federal law. I have been employed as a Special Agent of the FBI since December of 2020, and I am currently assigned to the Rochester, New York, Resident Agency. My duties involve investigating federal crimes including violations of Title 18, United States Code, Sections 2251 and 2252A.

2. The information contained in this affidavit is based upon my personal knowledge and observations, my training and experience, conversations with other law enforcement officers and witnesses, and my review of documents and records related to this case.

3. This affidavit is submitted for the limited purpose of establishing probable cause that BRIAN WHITE did knowingly violate Title 18, United States Code, Sections 2252A(a)(2) and (b)(1) (receipt/distribution of child pornography) and 2252A(a)(5)(B) and (b)(2) (possession of child pornography) (together, the "TARGET OFFENSES").

4. Because this affidavit is being submitted for the limited purpose of securing a Criminal Complaint, I have not included every fact known to me as a result of this investigation. Rather, I have set forth facts that I believe are relevant to establish probable cause to believe that WHITE knowingly committed the TARGET OFFENSES.

5. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part.

## PROBABLE CAUSE

6. This FBI investigation began with an individual utilizing username "anydude4567" (the "SUBJECT USER") who registered an account on a known website operated over the Tor network (the "TARGET WEBSITE").

7. The name of the TARGET WEBSITE, which ceased operating in 2024, as well as certain details regarding the website and its users, are known to law enforcement but not included here to protect operational security. Users of the TARGET WEBSITE and similar websites are often highly conscious of security and law enforcement activity. If former users of the TARGET WEBSITE learned of the investigative activity set forth in this affidavit, they could take steps to jeopardize the broader investigation, including by destroying evidence, changing patterns of behavior, alerting coconspirators, and fleeing from law enforcement.

***Background on the TOR network and TARGET WEBSITE***

8. The TARGET WEBSITE was operated on the Tor network, which is a computer network designed to facilitate anonymous internet communication by routing communications through a globally distributed network of relay computers operated by volunteers. A user may access the Tor network via any computer or electronic device that has been configured to use Tor routing/software, to include computers, smartphones, or tablets. The most common method is to use the Tor web browser, which is preconfigured to access the network. The contents of a Tor user's communications are encrypted while the

communication passes through the Tor network. However, when a Tor user visits a website and requests content from the website server, the website server can still reliably transmit the requested content to the Tor user's computer. Because of the way the Tor network routes communications through relay computers, traditional online investigative techniques are generally not effective against targets on the Tor network.

9. Tor may be used to access open-internet websites, like www.justice.gov, and to operate or access websites called "hidden services" or "onion services," that are accessible only to Tor users. Like other websites, hidden services are hosted on computer servers that communicate through IP addresses. However, hidden services have unique technical features that attempt to conceal the computer server's location. The TARGET WEBSITE was a hidden service.

10. A Tor web address is generally comprised of a series of 56 algorithm-generated characters, *i.e.*, "asdlk8fs9dflku7fasdlk8fs9dflku7fasdlk8fs9dflku7fasdlk8fs," followed by the suffix ".onion." Unlike ordinary websites, there is no publicly available Domain Network Service "DNS" listing through which one can query the IP address of a Tor hidden service. So, while law enforcement agents can often view and access hidden services like the TARGET WEBSITE that are facilitating illegal activity, it cannot determine the IP address of a Tor hidden service computer server via public lookups. Investigators can, however, successfully identify the IP addresses of computers used by criminals accessing the Tor network through various methodologies including the one described herein.

11. Tor hidden service websites are also not "indexed" by search engines like Google to anywhere near the same degree as websites that operate on the open internet. Accordingly, it is much more difficult to perform an internet search of hidden service websites

for particular content of interest. Users interested in accessing child pornography websites on the Tor network therefore typically use Tor network "directory" sites that list the web addresses of hidden services, including web forums, chat sites, image galleries, and file hosts containing child-exploitation content. Such directories often identify whether particular sites are then operating, if child pornography may be found there, what types of child pornography are accessible, and these directories typically contain clickable hyperlinks to access those sites.

12. The TARGET WEBSITE was a child pornography website that operated over the Tor network. It ceased operating in 2024. When it was active, users regularly used the website to advertise and distribute child pornography. Child pornography images and videos were trafficked through the TARGET WEBSITE via the posting of web links on the website's forum. These links allowed a user to navigate to another website, such as a file-hosting website where images and/or videos were stored, in order to download the linked-to images and videos.

13. To access the TARGET WEBSITE, a user needed to register an account with a username and password. Before a user could register an account, he had to traverse a webpage explicitly stating that the TARGET WEBSITE is dedicated to child pornography. Once a user registered an account, he could then log into the TARGET WEBSITE with his username and password. His username was also reserved for his exclusive use while his account was still active. Users who did not have an active username and password could not access any content beyond the login page on the TARGET WEBSITE.

14. After a user accessed the TARGET WEBSITE via a registered account, he could visit webpages on which users shared links to child pornography and discussed child pornography and the sexual abuse of children. The uppermost portions of these pages

frequently displayed prepubescent children exposing their naked genitals. New TARGET WEBSITE users were restricted only to certain pages displaying child pornography. Once a user gained additional status on the TARGET WEBSITE, he could access additional pages displaying child pornography. Some of these pages were organized into subsections with names that unambiguously referred to children under the age of 18.

15. The TARGET WEBSITE contained a page that set forth the rules of the website. These rules made clear that all content posted to the TARGET WEBSITE must depict a minor child and that adult pornography is prohibited on the TARGET WEBSITE.

16. Undercover FBI agents accessed posts made by TARGET WEBSITE users that contained links to child pornography images or videos. These posts generally contained descriptive text that referred to the age of the child victim and the sexual activity depicted in the image or video. For example, on different occasions in 2023 and 2024, undercover FBI agents accessed the following posts, among many others:

a. A post made by a TARGET WEBSITE user that included a link as well as descriptive text suggesting that the linked-to content would depict bondage. An undercover FBI agent clicked on the link and was redirected to a page displaying multiple images of a prepubescent girl, estimated to be between the ages of five and seven, bound with restraints. In some of the images, an adult male inserts his fingers and objects in the girl's vagina and anus. The girl has young facial and bodily features as well as no noticeable breast development or pubic hair.

b. Another post made by a TARGET WEBSITE user that included a link as well as descriptive text suggesting that the linked-to content would depict the sexual penetration of a prepubescent child. An undercover FBI agent clicked on the link and was redirected to a page offering images and videos. In more than one video, an adult man engages in anal sex with a prepubescent girl. The girl appears to be between the ages of four and six and has young facial and bodily features as well as no noticeable breast development or pubic hair.

c. Another post made by a TARGET WEBSITE user that included a link as well as descriptive text suggesting that the linked-to content would depict the sexual

penetration of a prepubescent child. An undercover FBI agent clicked on the link and was redirected to a page offering a video of an adult man engaging in sexual intercourse with a prepubescent girl estimated to be between the ages of three and six. The girl has no noticeable pubic hair and very small bodily features.

17. These examples area generally representative of the content available through the TARGET WEBSITE.

***BRIAN WHITE's Access of the TARGET WEBSITE***

18. Information relating to WHITE indicates that he knowingly accessed the TARGET WEBSITE with an intent to view and/or receive child pornography or attempted to do so.

19. In 2024, the FBI obtained evidence that the WHITE attempted to access the TARGET WEBSITE from an IP address assigned to 30 East Avenue, Livonia, New York, 14487 (the "SUBJECT PREMISES").

20. On or about June 4, 2024, 1:38:23 UTC, a user attempted to access the login page for the TARGET WEBSITE via the Tor network URL for the TARGET WEBSITE. The user instead connected to a webpage controlled by the FBI (the "FBI Webpage"), which appeared to be identical to the login page of the actual TARGET WEBSITE. This user voluntarily provided the FBI Webpage with a username and password. The FBI confirmed the username and password combination was accurate by entering the username and password into the actual TARGET WEBSITE, which resulted in a successful login to the user's account on the TARGET WEBSITE. FBI seized this username and password, and

other data the user provided to the server hosting the FBI Webpage, under the authority of a warrant.

21. When this user connected to the FBI Webpage on June 4, 2024, 1:38:23 UTC, and requested data from that webpage, the FBI computer hosting the webpage sent the requested data through the Tor network and back to the user's computer. The FBI then analyzed non-content information from a Tor relay computer that was collected pursuant to a pen register/trap and trace order. By analyzing this information, the FBI determined that a computer assigned IP address 172.101.209.59 (the "Subject IP Address") received the same data that the FBI sent to the computer of the user who visited the FBI Webpage.

22. According to publicly available information about Tor relay computers provided by the Tor Project, the Subject IP Address was not assigned to any computer serving as a Tor relay computer on June 4, 2024, 1:38:23 UTC. This means that the webpage data sent by the FBI computer to the user's computer exited the Tor network and arrived at the user's computer, which was assigned the Subject IP Address.

23. Accordingly, an individual using the Subject IP Address attempted to access the TARGET WEBSITE and entered the unique username and password for the user's account on the TARGET WEBSITE. There is thus reason to believe that the user resides or has been present at the premises associated with the Subject IP Address.

24. Through the same process described above, the FBI also determined that the user attempted to access the TARGET WEBSITE on June 4, 2024, 01:40:33 UTC, June 13, 2024, 01:15:35 UTC, June 28, 2024, 10:48:19 UTC, July 20, 2024, 11:00:31 UTC, July 25, 2024, 01:39:35 UTC, and September 4, 2024, 01:18:25 UTC.

25. According to publicly available information, Charter Communications owns, administers, and/or controls the Subject IP Address. In response to an FBI administrative subpoena, Charter Communications provided records indicating that the Subject IP Address was assigned to the SUBJECT PREMISES between the lease start date of October 17, 2019, through at least June 29, 2024. Charter Communications provided the following subscriber information regarding the Subject IP Address as well:

> Subscriber Name: BRIAN WHITE
> Service Address: 30 East Avenue, Livonia, New York 14487
> Phone Number: 585-346-9530
> Lease Log: Start Date – 10/17/2019 06:29 P.M., End Date – 02/28/2025 07:10 P.M.

***Search Warrant Execution and Interview of BRIAN WHITE***

26. A search and seizure warrant issued in the Western District of New York for WHITE's residence of 30 East Avenue, Livonia, New York 14487 was executed on April 4, 2025. *See* 25-MJ-549.

27. On April 4, 2025, Agents interviewed WHITE at his residence. WHITE acknowledged that he has looked at pictures depicting child pornography online. In summary, WHITE explained that he has accessed sites online using a TOR browser on his custom desktop computer located in his basement. WHITE advised that he had a folder that he would download the pictures to, then he would view them and then delete them. WHITE advised that he has a text file on the desktop that has links to websites that he would use to copy and paste into the browser to access.

28. During the search, a custom desktop computer (the "SUBJECT COMPUTER") was seized. The SUBJECT COMPUTER was submitted to the Western

New York Regional Computer Forensic Laboratory (the "RCFL") for a forensic extraction and examination of data pursuant to the search warrant.

29. The RCFL determined that the SUBJECT COMPUTER contained three hard drives, two of which were a Western Digital NVMe Solid State Drive ("SSD"); Model #: WDS500G2B0C; Serial #: 21381C806107; Capacity: 500 GB (the "SUBJECT WD HARD DRIVE") and a Toshiba Hard Disk Drive ("HDD"); Model #: Dto1ABA100V; Serial #: 153PXM9NSY77; Capacity: 1 TB ( the "SUBJECT TOSHIBA HARD DRIVE"). The RFCL imaged, processed and examined the hard drives pursuant to the search warrant and provided the results to me. I reviewed these results for evidence of the TARGET OFFENSES and observed the following.

30. I observed the SUBJECT WD HARD DRIVE to have a user account of:

User Name: MrBri
Full Name: Brian White
Internet User Name: MrBrianMWhite@gmail.com

31. I observed the SUBJECT WD HARD DRIVE to contain approximately 1,970 images of child pornography to include approximately 85 images of infant girls approximately 0-18 months of age. The images of infant-age girls depicted the infant's genitals in a lascivious manner and/or an adult penis touching a part of the infant's body or an adult male's penis inserted into the infant girl's vagina. Two such images are described below:

a. MD5 Hash: 6abc3b14f465abc71ce5eafae1fc55aa- An image depicting an approximately 0–12-month-old infant girl that appears to have fabric covering her eyes. An adult male is holding the infant's feet against her face and the adult male's penis is inserted into the infant's vagina.

b. MD5 Hash: aa3eeb4f71d951ebaa417d31f8172453- An image depicting an approximately 0–9-month-old infant girl. An adult male's penis is pressed against the infant's vagina.

32. Within the approximately 1,970 images of child pornography SUBJECT WD HARD DRIVE, I further observed images that depicted girls approximately 1-6 years of age. Multiple of these images depicted a girl restrained to a bed by her wrists. One such image is described below:

c. MD5 Hash: b47791319a3cb09a1d34fa21d4f46162- An image depicting a girl approximately 2-4 years of age, naked with her legs spread apart exposing her vulva. The girl's wrists are bound with what appears to be fabric restraining the girl to a bed.

33. Based upon my training and experience in the investigation of child pornography cases, I believe that these images to constitute child pornography, as defined by Title 18, United States Code Section 2256(8).

34. I further observed that the SUBJECT WD HARD DRIVE to contain "Accessed files and folders" that are indicative of child pornography. Three examples are as follows:

a. Path: My Compter: Desktop\New folder\[PTHC] Scar Girl (Classic CP) (blonde) (USA, 2005\pics\Scar Girl\ (Accessed- 12/16/2024 7:54:43. In my training and experience, "PTHC" is frequently used by child pornographers as an acronym for "Pre-Teen Hardcore")

b. Path: C:\Users\MrBri\Desktop\New folder\892135476 {S,Cum On Baby Pussy 9421727m9421727B 480x272 01m44s024}.mp4 (Accessed- 3/13/2025 21:32:44)

c. Path: C:\Users\MrBri\Desktop\New folder\ 21 clips\Naughty Babysitter teaches Little Toddler How to Suck It.mp4 (Accessed- 3/14/2025 7:34:03)

35. I also observed that the SUBJECT TOSHIBA HARD DRIVE contained approximately 288 computer generated images, some of which appear to depict minor-age females naked and/or engaged in sex acts with males.

36. The SUBJECT TOSHIBA HARD DRIVE further contained a text document that included URLs and user accounts described by WHITE during his interview. Some of the URLs contained terms commonly used in the search of child pornography. One of the user accounts matched the username identified that was initially identified by the FBI as accessing the TARGET WEBSITE in June 2024. For example, the URL text and the user account text are as follows:

a. http:\\pedolinkhcrlogpmxscpxc6m7kk34tlgn7ugpvyncvhesgkewbejs6qd.onion\

b. anydude4567

37. Based on a search of publicly available information, it appears that the SUBJECT WD HARD DRIVE and SUBJECT TOSHIBA HARD DRIVE were manufactured and/or assembled outside of the United States.

**CONCLUSION**

38. Based upon the forgoing, I respectfully submit that there is probable cause to believe that BRIAN WHITE did knowingly violate Title 18, United States Code, Sections 2252A(a)(2), (a)(5)(B), (b)(1), and (b)(2).

Christa Snyder
Special Agent
Federal Bureau of Investigation

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d).

On November 19, 2025.

HON. MARK W. PEDERSEN
United States Magistrate Judge